FILED
HARRISBURG, PA
OCT 0 1 2026
PER ____
DEPUTY CLERK

**UNITED STATES DISTRICT COURT**

**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

S.M., a Minor, by REBECCA MACK, Guardian,

Plaintiff,

v.

RIPLEIGHS LLC and LAURA MARING,

Defendants.

Civil Action No. 1:26-cv-02101-YK

(Judge Kane)

(Assigned by Judge Kane to the Chief Magistrate Judge)

**DEFENDANT'S ANSWER AND COUNTERCLAIMS**

Defendants answer the First Amended Complaint ("Complaint") and asserts Counterclaims as follows. Each numbered response corresponds to the same numbered paragraph in the Complaint.

1. On information and belief, this is admitted.
2. Admitted.
3. Denied.
4. Admitted. For clarity, Laura Maring is a resident of Maryland, not Pennsylvania.
5. Admitted that Plaintiff is attempting to pursue such a claim.
6. Admitted.
7. Admitted that Plaintiff is attempting to pursue such a claim. Denied insofar as the claim rests on Defendant presumably being a covered employer under Title VII. Defendant is not, in fact, a covered employer.
8. Admitted that Plaintiff is attempting to pursue such a claim. Denied that this is a claim subject to the PHRA. Any claim should have been brought in Maryland.
9. Denied that this Court should maintained supplemental jurisdiction over the PHRA claims.
10. Denied as stated. The case should have been filed in Maryland, if at all.
11. Denied as stated. The case should have been filed in Maryland, if at all.
12. Denied as stated. The case should have been filed in Maryland, if at all.
13. Denied as stated. The case should have been filed in Maryland, if at all.
14. Denied as stated. The case should have been filed in Maryland, if at all.

15. Denied as stated. The case should have been filed in Maryland, if at all.

16. Denied as stated. The case should have been filed in Maryland, if at all.

17. Denied as stated. The case should have been filed in Maryland, if at all.

18. Denied as stated. The case should have been filed in Maryland, if at all.

19. Denied as stated. The case should have been filed in Maryland, if at all.

20. Denied as stated. The case should have been filed in Maryland, if at all.

21. Denied as stated. The case should have been filed in Maryland, if at all.

22. Denied as stated. The case should have been filed in Maryland, if at all.

23. Denied as stated. The case should have been filed in Maryland, if at all.

24. Denied as stated. The case should have been filed in Maryland, if at all.

25. Denied as stated. The case should have been filed in Maryland, if at all.

26. Denied as stated. The case should have been filed in Maryland, if at all.

27. Defendant believes this is true.

28. Defendant believes this is true.

29. Admitted that Plaintiff was hired to work at Defendant's ice cream truck in Emmitsburg, MD. Denied that she was working 15 hours per week.

30. Admitted in part. She sometimes worked with SF, sometimes at her own request.

31. Denied.

32. Denied.

33. Denied.

34. Admitted.

35. On information and belief, this appears to be the first line of a longer text message exchange between Plaintiff and her co-worker, SF.

36. Denied.

37. On information and belief, this appears to be the first line of a longer text message exchange between Plaintiff and her co-worker, SF.

38. On information and belief, this appears to be the first line of a longer text message exchange between Plaintiff and her co-worker, SF.

39. Denied as stated. Defendant was not present during this exchange, as she was in North Carolina on a business trip at the time.

40. Denied as stated. Defendant was not present during this exchange, as she was in North Carolina on a business trip at the time.

41. Denied as stated. Defendant was not present during this exchange, as she was in North Carolina on a business trip at the time.

42. Denied as stated. Defendant was not present during this exchange, as she was in North Carolina on a business trip at the time.

43. Denied as stated. Defendant was not present during this exchange, as she was in North Carolina on a business trip at the time.

44. Denied as stated. Defendant was not present during this exchange, as she was in North Carolina on a business trip at the time.

45. Denied as stated. Defendant was not present during this exchange, as she was in North Carolina on a business trip at the time.

46. Denied as stated. Defendant was not present during this exchange, as she was in North Carolina on a business trip at the time.

47. Admitted that Plaintiff reportedly showed the text message to both parents. Defendant was not present during this exchange, as she was in North Carolina on a business trip at the time.

48. Denied. The phone call came from an adult male using Joseph Mack's telephone and threatened to leave the boy (SF) dead lying in a ditch.

49. Admitted that the boy (SF) reported the death threat to the Plaintiff's mother Rebecca Mack. Denied that the report was false.

50. Denied as stated. The text messages speak for themselves.

51. The text message speaks for itself.

52. The text message speaks for itself.

53. This is part of a complete text message which speaks for itself.

54. Denied.

55. This is part of a complete text message which speaks for itself.

56. Denied.

57. Denied.

58. This is part of a complete text message which speaks for itself.

59. This is part of a complete text message which speaks for itself.

60. This is part of a complete text message which speaks for itself.

61. This is part of a complete text message which speaks for itself.

62. This is part of a complete text message which speaks for itself.

63. This is part of a complete text message which speaks for itself.

64. This is part of a complete text message which speaks for itself.

65. This is part of a complete text message which speaks for itself.

66. This is part of a complete text message which speaks for itself.

67. This is part of a complete text message which speaks for itself.

68. This is part of a complete text message which speaks for itself.

69. This is part of a complete text message which speaks for itself.

70. This is part of a complete text message which speaks for itself.

71. This is part of a complete text message which speaks for itself.

72. This is part of a complete text message which speaks for itself.

73. This is part of a complete text message which speaks for itself.

74. This is part of a complete text message which speaks for itself.

75. Admitted that Plaintiff was terminated because of inappropriate conduct by Ms. Mack and the death threat against the boy (SF) coming from Mr. Mack's

cell phone, which created an imminent threat of workplace violence by the Mack parents.

76. This is a legal statement. No response is required.

77. This is a legal statement. No response is required.

78. This is a legal statement. No response is required.

79. This is a legal statement. No response is required.

80. This is part of a complete text message which speaks for itself. The conclusory allegations are denied.

81. This is part of a complete text message which speaks for itself. The conclusory allegations are denied. In particular, the communications alleged by Plaintiff in the Complaint demonstrate a lack of prima facie case and non-retaliatory reasons for the termination: to avoid imminent workplace violence by her parents against the boy.

82. Denied as stated. The Plaintiff was terminated because of the inappropriate behavior and death threats coming from her parents, a valid non-retaliatory motive to prevent workplace violence.

83. Denied. The Plaintiff was terminated because of the inappropriate behavior and death threats coming from her parents, a valid non-retaliatory motive to prevent workplace violence. The text message referenced speaks for itself.

84. Denied. The Plaintiff was terminated because of the inappropriate behavior and death threats coming from her parents, a valid non-retaliatory motive to prevent workplace violence. The text message referenced speaks for itself.
85. This is a legal statement. No response is required.
86. Denied. The Plaintiff was terminated because of the inappropriate behavior and death threats coming from her parents, a valid non-retaliatory motive to prevent workplace violence. The text message referenced speaks for itself.
87. Denied, strict proof is demanded. Plaintiff was offered the compensation she would have earned for the nine days remaining in the ice cream season. She declined the offer several times, thus refusing to mitigate any claimed compensatory damages. Refusal to accept tendered compensation releases Defendant from liability.
88. Denied. Strict proof is demanded.
89. This is a legal statement. No response is required.
90. This is a legal statement. No response is required.
91. Denied as stated. The Plaintiff was terminated because of the inappropriate behavior and death threats coming from her parents, a valid non-retaliatory motive to prevent workplace violence.
92. Denied as stated. The communications attributed to Defendant in the Complaint establish a non-retaliatory motive for the termination (to avoid

escalating conflict by the parents) and defeat any prima facie showing by Plaintiff.

93. Denied as stated. The communications attributed to Defendant in the Complaint establish a non-retaliatory motive for the termination (to avoid escalating conflict by the parents) and defeat any prima facie showing by Plaintiff.

94. Denied as stated. The communications attributed to Defendant in the Complaint establish a non-retaliatory motive for the termination (to avoid escalating conflict by the parents) and defeat any prima facie showing by Plaintiff. Plaintiff was terminated before the end of her shift because her parent, possibly Joseph Mack, would be arriving to pick her up from work at a time when SF would be arriving for work. Defendant sought to avoid the threat of workplace violence that could endanger her co-worker and patrons.

95. Denied as stated. The communications attributed to Defendant in the Complaint establish a non-retaliatory motive for the termination (to avoid escalating conflict by the parents) and defeat any prima facie showing by Plaintiff. Plaintiff was terminated before the end of her shift because her parent, possibly Joseph Mack, would be arriving to pick her up from work at a time when SF would be arriving for work. Defendant sought to avoid the threat of workplace violence that could endanger her co-worker and patrons.

96. Denied as stated. The communications attributed to Defendant in the Complaint establish a non-retaliatory motive for the termination (to avoid escalating conflict by the parents) and defeat any prima facie showing by Plaintiff. Plaintiff was terminated before the end of her shift because her parent, possibly Joseph Mack, would be arriving to pick her up from work at a time when SF would be arriving for work. Defendant sought to avoid the threat of workplace violence that could endanger her co-worker and patrons.

97. Denied as stated. The communications attributed to Defendant in the Complaint establish a non-retaliatory motive for the termination (to avoid escalating conflict by the parents) and defeat any prima facie showing by Plaintiff. Plaintiff was terminated before the end of her shift because her parent, possibly Joseph Mack, would be arriving to pick her up from work at a time when SF would be arriving for work. Defendant sought to avoid the threat of workplace violence that could endanger her co-worker and patrons.

98. Denied, strict proof is demanded. Plaintiff was offered the compensation she would have earned for the nine days remaining in the ice cream season. She declined the offer several times, thus refusing to mitigate any claimed compensatory damages. Refusal to accept tendered compensation releases Defendant from liability.

99. Denied.

100. This is a legal statement. No response is required.

101. This is a legal statement. No response is required.

102. Admitted Plaintiff is female. This is a legal statement. No response is required.

103. Denied. Plaintiff was not qualified for the position. Defendant hired her because she wishes to offer employment to the youth in the area.

104. Denied. Plaintiff was not qualified for the position. Defendant hired her because she wishes to offer employment to the youth in the area.

105. Denied. Plaintiff was not qualified for the position. Defendant hired her because she wishes to offer employment to the youth in the area.

106. Denied. Plaintiff was not qualified for the position and her termination resulted conflict arising from the misconduct of both of her parents.

107. Admitted.

108. Admitted.

109. Denied. Plaintiff's co-worker was a well qualified worker and was not similarly situated with Plaintiff.

110. Plaintiff's co-worker was reprimanded, not terminated, because his parents (unlike Plaintiff's) did not threaten anyone's life. Had the co-worker's parents behaved in a manner similar to Plaintiff's parents, he would have been terminated to prevent workplace violence.

111. Denied. The Complaint itself provide the Defendant's non-retaliatory motive for terminating Plaintiff.

112. Denied. The Complaint itself provide the Defendant's non-retaliatory motive for terminating Plaintiff.

113. Denied. Strict proof is demanded. Plaintiff's refusal to accept her compensation for hours she would have worked in the nine days remaining in the ice cream season reflects a refusal to mitigate damages and releases Defendant from liability.

114. Denied.

115. Denied.

116. Denied.

## GENERAL DEFENSES

117. Defendant is not a covered employer under Title VII because it does not employ 15 or more employees as alleged in Paragraph 3 of the Complaint. Defendant is not subject to jurisdiction on the PHRA claims because this case was overwhelming based in Maryland and should have been filed there, if at all. Plaintiff fails to state claims under both Title VII and the PHRA. Plaintiff failed to mitigate damages, has refused offers of pay that would have fully compensated her for the remaining nine (9) days of the ice cream season (not as a legal obligation but as a business courtesy) and

her refusal of tendered compensation releases Defendants from liability. Plaintiff and her Guardian, Rebecca Mack, have engaged in "unclean hands" by their ongoing vendetta against Defendants and non-privileged extra-judicial communication to PennLive and other media outlets falsely accusing Defendant of unlawful conduct, knowing that Plaintiff was terminated because of escalating conflict with Rebecca Mack and a death threat coming from Joseph Mack's phone against Plaintiff's 16-year old co-worker (SF).

**COUNTERCLAIM**

1. Counterclaimant Laura Maring is an individual domiciled in Maryland and with a place of business in Maryland and Pennsylvania.
2. On information and belief, Plaintiff (SM) and her Guardian, Rebecca Mack, are domiciled in Adams County, Pennsylvania.
3. The claims concerning the underlying harassment dispute, the communications about the 16-year-old co-workder (SF) and the resulting employment decision share operative facts with the federal claims. Supplemental jurisdiction is asserted under 28 U.S.C. § 1367(a) to the extent the completed allegations establish a common nucleus of operative fact. The relationship of the later publication campaign to those facts is that it was a continuation of the animus exhibited by Ms. Mack at the time of her daughter's termination and has been a continuing and relentless vendetta in

her efforts to harm Counterclaimant in her business and personal reputation and to cause financial loss to Counterclaimant.

4. On information and belief, Plaintiff (SM)and her Guardian, Rebecca Mack, made direct and indirect extrajudicial non-privileged communications to reporters for PennLive and in online social media, and encouraged others to do likewise, for the malicious purpose of defaming Counterclaimant publicly and to damage her business interests in Ripleighs LLC.

5. On information and belief, Plaintiff and Rebecca Mack made additional non-privileged public communications to PennLive to the effect that Ripleighs LLC was closing a store location in Pennsylvania and falsely attributing the store closure to Defendant's sex discrimination and retaliatory discharge against Plaintiff.

6. At the time of these non-privileged extra-judicial communications, Plaintiff and Rebecca Mack knew that Plaintiff had been terminated because of escalating conflict with Rebecca Mack and death threats emanating from Mr. Mack's phone against Plaintiff's 16-year-old co-worker, a valid, urgent and non-retaliatory motive for Plaintiff's discharge.

7. The death threat alleged in above originated from a phone registered to Joseph Mack, Plaintiff's father.

8. On information and belief, Joseph Mack has a past history of criminal convictions and Counterclaimant's heightened concern over the threat of workplace violence was appropriate under the circumstances.

9. The false and malicious communications by Plaintiff and/or Rebecca Mack were made outside of court proceedings and intentionally were designed to put Defendant in a false light and damage her personal and business reputation and to damage the value of her business interests.

10. As a direct result of such knowingly false and malicious communications and orchestrate "smear campaign," Defendant has suffered embarrassment, humiliation, loss of customers, loss of income, loss of the value of her property and the closure of her ice cream shop in Pennsylvania.

11. WHEREFORE, Counterclaimant seeks compensatory damages of $250,000 and punitive damages of $250,000 against Plaintiff (SM) and Rebecca Mack and such other relief as the Court deems just and proper.

Respectfully submitted,

By: ______________________________
Laura Maring
Defendant Pro Se[1]
332 Baltimore Street
Taneytown, MD 21787
Mobile: 443.605.3029
lfurbay@yahoo.com

Date: October 1, 2026

## CERTIFICATE OF SERVICE

I certify that on October 1, 2026, I served a true and correct copy of the foregoing document upon counsel for Plaintiff by first-class mail and email at:

Kyle H. Steenland, Esquire,
Steenland Law, PLLC,
1575 McFarland Road, Suite 212,
Pittsburgh, PA 15216
kyle@steenlandlaw.com

By: ______________________
Laura Maring

---

[1] Defendant is proceeding **pro se**. Defendant acknowledges that she received **pro bono** legal assistance in researching and preparing this filing. Assisting counsel has not entered an appearance and does not represent any Defendant generally in this action at the present time. If this changes, he will move the Court for pro-hac vice admission.